JANUARY TERM, 1874. 475

People ex rel. Splain v. New York Juvenile Asylum.

PEOPLE *ex rel.* SPLAIN v. NEW YORK JUVENILE ASYLUM.

*Apprenticeship — N. Y. Juvenile Asylum — indenture to person out of State — Constitutional law.*

An indenture of a minor to service in a trade or employment for the period of his minority, executed by the New York Juvenile Asylum to a resident of Illinois, with the written consent of the minor's mother, after a previous surrender by her of the child to the custody and control of the asylum for and during his minority, constitutes a legal contract for binding the child to an employment, where it appears that such indenture contains all the covenants for the minor's benefit required by the laws of Illinois, and conforms to the laws of this State.

The act (Laws 1851, ch. 332), incorporating the New York Juvenile Asylum, and the acts amending the same (Laws 1854, ch. 387 ; 1866, ch. 245), by which power is given to the asylum to bind out or indenture the children committed to its charge as apprentices, etc., to some profession, trade or employment, in any State of the Union recognizing the validity of such indentures, are valid and constitutional.

CERTIORARI to review a decision of Mr. Justice DAVIS dismissing a writ of *habeas corpus,* issued December 9, 1872, requiring the respondent to produce in court the body of Michael Joseph Splain, a minor, the son of the relator.

The return, which is sustained by the evidence, shows that Michael Joseph Splain was not, at the time of the service of the writ, in the custody or under the control of the respondent, but was in the custody and under the control of one George W. Zimmerman, of Spar-

land, Marshall county, Illinois, to whom said child had been indentured five years before.

The surrender of the child by the mother (who was a widow) to the respondent was made in the form required by law.

The New York Juvenile Asylum was incorporated under an act entitled, "An act to incorporate the New York Juvenile Asylum," passed June 30, 1851 (chap. 332). By said act, as amended by chapter 387, Laws of 1854, and further amended by chapter 245, Laws of 1866, it is provided that the corporation may receive under its care and management children between the ages of seven and fourteen years belonging to certain classes therein described. Among such classes are children who, by the consent, in writing, of their parents and guardians, are voluntarily surrendered and intrusted to it. Such children are to be deemed to be in the lawful charge and custody of the corporation. It is given power, in its discretion, to bind out or indenture, as clerks or apprentices, in this State, and also in any State of the United States which shall, by its laws, recognize the validity of such indentures, to some profession, trade or employment, the children intrusted or committed to its charge, and for a shorter or longer period, not exceeding the age of twenty-one years for males, and eighteen years for females.

The State of Illinois, in February, 1861, passed an act recognizing the validity of indentures by the said corporation to citizens of that State.

*M. J. A. McCaffery*, for relator. The surrender gives no authority to respondent, except temporarily, to retain the child, subject to the parent's right. If the respondent's charter gives it the right to send children out of the State, it is unconstitutional. *Groff's Case*, N. Y. C. P., 1865 (unreported).

*Charles D. Adams*, for the respondent.

DANIELS, J. The writ of certiorari issued in this case was designed to review a proceeding on *habeas corpus*, which was heard and decided before the court held at chambers. It should for that reason have been addressed to the court, instead of the justice presiding and holding it. But as a return has been made, the irregularity in this respect will not render it improper to dispose of the case upon its merits.

The writ of *habeas corpus* was issued for the purpose of having the relator's son, Michael Joseph Splain, brought before the court in order that it might be determined whether or not he was unlawfully detained from her custody and control. Upon its return the body of the child was not produced before the court, and the omission was attempted to be excused by the statement, in the return, that he had been removed to the State of Illinois, where he had been indentured for the period of his minority, and where he then was, when the return was made. The evidence taken on the traverse of the return showed that the child, at the age of about nine years, was surrendered by the relator to the respondent's custody and control, for and during the period of his minority, with the same powers as she herself possessed. At the time of such surrender, which was made by her in writing on the seventh of February, 1867, the child was under the sole control of the relator. He afterwards remained in the custody of the respondent until the 23d of September, 1867, when he was indentured by it to George W. Zimmerman of Sparland, in the State of Illinois, for the period of eleven and three-twelfth years. At the time of his departure from the State, the relator consented to his removal. But she says her assent was given on the understanding, that he was to be taken only a short distance into the country, where he was to be detained until she was able to secure a home for him. This statement is not entirely credible, because it is contradicted by the entry in the books of the respondent's institution, showing that her assent was given to his removal to the place where he now is; and it is inconsistent with the previously unqualified surrender, which she made of her child's custody to the respondent. The court could very well conclude that the relator assented to her son's removal to reside there for the period of his minority, as the books of the institution showed that she did. And it may now be presumed to have done so, in support of the decision made on the hearing and determination of the traverse. The respondent was authorized to accept the custody of the relator's child upon the written surrender executed by her (Laws of 1866, chap. 245, § 7); and afterwards to bind him out in any State in the United States, whose laws recognized the validity of the indenture made by the respondent, to some profession, trade or employment, until he attained the age of 21 years (id., § 18) As the State of Illinois, by act passed before the execution of the indentures made for the relator's son, did recognize the validity

of such indentures, provided they contained certain covenants for the benefit of the minor required by the laws of that State, and the indentures made contained all such covenants as could be reasonably suggested or required, the indentures made for the relator's child must constitute a legal contract for binding him to an employment within the terms of both statutes, particularly as it was not suggested that any covenant, which the laws of Illinois required for the minor's benefit, had been omitted from the indentures.

It was claimed on the argument that the child had been bound beyond the period of his minority, and that the indentures were unlawful for that reason. This position was taken on the relator's own evidence, in which she stated his age to be about one month more than the age mentioned in the surrender signed by her. That stated him to be about nine on the 22d of January, 1867. These statements are entirely inconsistent ; and, as the one contained in the written surrender of her son's custody was made when no motive existed for misrepresentation, that was more likely to be true than her evidence given for the purpose of re-asserting her control over his custody. Besides that, the respondent was required to ascertain the true age of the child, as far as that could be practically done, and to enter it in the books of the institution. That appears to have been done. And the statute provided that the age so ascertained should be deemed the true age of the child. Laws of 1866, chap. 245, § 18. For both these reasons, this position cannot be allowed to prevail. Upon neither ground does it appear that the child was bound to service beyond the period of his minority.

The power exercised by the respondent seems to have been used in strict conformity to the terms of the law, and no reason appears for doubting the validity of such legislation. It is essential to the good order and protection of the community, and constitutes a part of the general police power of the State. That power cannot be more humanely and usefully exercised than it is by making salutary and wise provisions for the education, improvement, comfort and security of the destitute, homeless and needy children found in the large cities of the State. Both their own usefulness and prosperity, and the interests of the public, are greatly promoted by its judicious and discriminating use. No case could illustrate the wisdom and propriety of such legislation more completely than the present. Under its provisions the child of the relator, whom she proved unable to care for and maintain, was by her voluntarily surrendered to the custody of a

charitable institution, by whose interposition he has found a friendly and hospitable home, in which his education has been provided for and his wants completely supplied. The interests of the child himself, as well as those of his mother, will undoutedly be best subserved by leaving him during the residue of his minority among the new friends, who, the evidence shows, have become interested in his welfare. There seems to be no ground on which the validity of the indentures can be properly questioned. Besides that, the respondent has no control over his custody. That was parted with, in apparent good faith, in the mode prescribed by law, and no authority seems to exist for annulling the indentures by which the relator's child has become bound. The decision made by the court, upon the return of the *habeas corpus*, was right, and it should be affirmed.

DONOHUE, J., concurred in the result.

*Proceedings affirmed.*